IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| APEX ENERGY SOLUTIONS OF CINCINNATI LLC, *et al.*, | : : Case Number: 1:10cv106 |
| Plaintiffs, | : : Chief Judge Susan J. Dlott : |
| v. | : ORDER GRANTING IN PART : DEFENDANTS' MOTION |
| APEX ENERGY SOLUTIONS OF INDIANA, LLC, *et al.*, | : TO DISMISS : : |
| Defendants. | : |

This matter is before the Court on Defendants' Motion to Dismiss (doc. 23). Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Whitney Price ("Price") moves the Court to dismiss him from the lawsuit for lack of personal jurisdiction. In addition, Defendants Apex Energy Solutions of Indiana, LLC ("Apex Indiana"); Apex Energy Group, LLC ("Apex Energy Group"); Michael Foit ("Foit"); and Price (collectively "Defendants") move to dismiss Plaintiffs' punitive damages claim under Rule 12(b)(6). For the following reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

**I.     BACKGROUND**

Plaintiffs are Apex Energy Solutions of Cincinnati LLC ("Apex Cincinnati") and Apex Development, Inc. ("Apex Louisville") (collectively "the McCain Group"), two businesses owned by Shawn McCain. Defendants are Apex Indiana, Apex Energy Group, and Foit (collectively "the Foit Group") as well as Price.

McCain and Foit are former partners in the business of home improvement, specifically, energy-efficient windows, siding, and doors. McCain and Foit began their business relationship in 1998. In 2000, McCain and Foit jointly started Apex Louisville, each owning a 50% interest; and in 2002, they jointly started Apex Indiana, each owning a 50% interest. In 2004, McCain started Apex Cincinnati by himself and then transferred a 50% interest to Foit.

Price is a former independent contractor for both Apex Indiana and Apex Louisville. In April 2007, when McCain and Foit were still partners, Price began working as an independent contractor for Apex Indiana. (Price Aff. 4/21/10 ¶ 1.)[1] While at Apex Indiana, Price trained with members of the Indiana team, including Foit. (*Id.* ¶ 3.) Then, in January 2008, Price moved to Lexington, Kentucky for personal reasons and began working as a marketing representative for Apex Louisville. (*Id.* ¶¶ 4-5.) In April 2008, Price began training as a sales representative for Apex Louisville focusing on the Lexington market. (*Id.* ¶ 7.) While employed by Apex Louisville, Price reported directly to Herman Lodde, an office manager in the Louisville office. (*Id.* ¶ 6.) Price became one of Apex Louisville's most profitable sales representatives.

In May 2008, McCain and Foit agreed to divide their ownership in the Apex entities and entered into an Agreement of Reorganization. Pursuant to the Agreement, McCain obtained 100% ownership of Apex Cincinnati and Apex Louisville, and Foit obtained 100% ownership of Apex Indiana. McCain has since started similar businesses in Columbus and Dallas. Foit has

---

[1] The Affidavit of Whitney Price in Support of Motion to Dismiss, dated April 21, 2010, is filed as CM/ECF doc. 24.

2

started similar businesses in Kansas City, Charlotte, Denver, and Minneapolis. At all relevant times, Apex Cincinnati acted as Apex Louisville's "corporate office." (McCain Aff. ¶ 4.)[2]

After the reorganization, McCain asked Price to come to Cincinnati on two occasions: in June 2008 for a training session and again in early 2009 for a sales meeting. (Price Aff. 6/9/10 ¶¶ 6, 11.)[3] At the June 2008 training session, which lasted approximately four hours, Price presented a sales pitch to McCain that Price had developed and was using in the Lexington market. (*Id.* ¶ 8.) All McCain Group sales representatives, including Price, were asked to attend the sales meeting in Cincinnati in early 2009. (*Id.* ¶ 11.) At that meeting, which lasted approximately two hours, McCain sought review of a potential sales brochure that was never implemented. (*Id.* ¶ 12.) These are the only two times Price came to Ohio other than to visit the Kings Island amusement park.[4]

In August 2009, Price quit his job with Apex Louisville to join his brother, Seth Price, in a joint business venture in Kansas City. (Price Aff. 4/21/10 ¶ 25.) Seth Price had entered into a licencing agreement with Apex Energy Group (part of the Foit Group) to operate an Apex in Kansas City. (*Id.* ¶ 22.) After Price quit his job with Apex Louisville, but before moving to

---

[2] The Affidavit of Shawn McCain is filed as CM/ECF doc. 30-1.

[3] The Affidavit of Whitney Price in Support of Defendants' Reply in Support of Motion to Dismiss, dated June 9, 2010, is filed as CM/ECF doc. 32.

[4] McCain stated in his affidavit that Price came to the Cincinnati Apex location "on numerous occasions." (McCain Aff. ¶ 5.) The evidence submitted by Plaintiffs clarifies that Price visited the Cincinnati office twice. (*See* O'Connor, Thompson, Bost, and Jonson Affs. ¶ 3 stating, "I personally attended at least 1 business meetings [sic] at the Apex headquarters in Cincinnati along with Whitney Price, where Apex's trade secrets were disclosed to Mr. Price." *See also* Woodson Aff. ¶ 3 stating, "I personally attended at least 2 business meetings at the Apex headquarters in Cincinnati along with Whitney Price, where Apex's trade secrets were disclosed to Mr. Price." These affidavits are filed as CM/ECF doc. 30-1, 30-2.)

Kansas City, he spent a week in Indiana training with Apex Energy Group learning how to operate as a licensee. (*Id*. ¶ 26.) Price is now 50% owner of Apex Kansas City, a Missouri LLC. (*Id*. ¶¶ 21, 29.)

When Price worked for Apex Louisville, all of his customers were residents of Kentucky. (*Id*. ¶ 14.) All the sales contracts Price negotiated were sent to Apex Louisville for processing. (*Id*. ¶ 16.) All of Price's business contacts while he was working with Apex Louisville were in Kentucky. All of his pricing information came from the Louisville, Kentucky office. (*Id*. ¶ 18.) Price's commission checks came from Apex Louisville. (*Id*. ¶ 17.) While employed by Apex Louisville, Price reported directly to Herman Lodde in the Louisville office; Price never reported to anyone in Ohio. (*Id*. ¶ 15.)

Plaintiffs' only claim against Price is misappropriation of trade secrets. The Amended Complaint alleges that while he was affiliated with Apex Louisville, Price had access to and obtained training in Plaintiffs' trade secret information. The Amended Complaint further alleges that after May 2008, the Foit Group used Price as an employee or independent contractor. The Amended Complaint does not describe the trade secret information allegedly misappropriated by Price, nor does it specify any acts of Price that constitute the use or disclosure of the alleged trade secrets. Rather, the Amended Complaint alleges that the Foit Group "will wrongfully benefit from [Plaintiffs'] trade secrets" by virtue of the Foit Group's "business relationship with Price." (*Id*. ¶ 42.) Defendants deny that Price is an employee or independent contractor of the Foit Group.

## II. DISCUSSION

### A. Motion to Dismiss Price for Lack of Personal Jurisdiction

4

Defendants argue that Price has had no meaningful contact with the state of Ohio and that, accordingly, this Court lacks personal jurisdiction over him either under Ohio's long arm statute, Ohio Rev. Code § 2307.382, or the Due Process Clause of the U.S. Constitution. The burden of establishing jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). If the district court decides the issue of personal jurisdiction solely on the basis of written materials, as is the case here, the plaintiff need only make a prima facie case of jurisdiction. *Id.*[5]

In a diversity case, the court looks to the law of the forum state to determine whether personal jurisdiction exists. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989)). In Ohio, the exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *Id.*; *see also Brunner v. Hampson*, 441 F.3d 457, 465 (6th Cir. 2006) (citing *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). Therefore, the Court must conduct two separate inquiries: whether the requirements of Ohio's long-arm statute are satisfied in this case and, if so, whether the Fourteenth Amendment's Due Process Clause prohibits this Court's exercise of personal jurisdiction over Price. *See Brunner*, 441 F.3d at 465-66 (concluding that because Ohio's long-arm statute has a different scope than the Due Process Clause, the two issues must be analyzed separately).

### 1. long-arm statute

---

[5] The parties in this case initially requested oral argument on the motion but then disclaimed the need for argument as neither party intended to present any evidence to the Court other than the written submissions already filed.

Ohio's long-arm statute enumerates nine categories of conduct that subject a person to personal jurisdiction in Ohio if a cause of action arises out of such conduct. Ohio Rev. Code § 2307.382(A). Plaintiffs assert that jurisdiction over Price is appropriate under subsections (A)(1), (A)(3), and (A)(6) of the statute, which allow a court to

> exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's
> (1) Transacting any business in this state; . . .
> (3) Causing tortious injury by an act or omission in this state; . . .
> [or] (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A).

Plaintiffs submit several affidavits to support their argument that this Court can exercise personal jurisdiction over Price. The affidavits of McCain and Price's manager Herman Lodde assert that Price learned the following trade secrets while in Cincinnati: "unique . . . sales techniques, including a laptop presentation that is unique in its content and style; confidential pricing information; [and] information about an operational structure that incorporated unique business methods of operation and pricing structures." (Doc. 30-1 at 1, 4.) Plaintiffs also submit the affidavits of five sales representatives and an office manager which generally state that they saw Price at a sales meeting or meetings in Cincinnati. There is no evidence that Price has used or disclosed any of the alleged trade secret information.

Price submit two affidavits of his own to counter Plaintiffs' position. In those affidavits, Price contends that any information he gained at the 2008 training session in Cincinnati with McCain was intended to be applied in Kentucky on behalf of Apex Louisville. Price also contends that at the company-wide meeting in Cincinnati in early 2009, McCain distributed

proofs of new sales literature that was never implemented. Price states that he would not have traveled to Cincinnati for these two meetings if McCain had not specifically requested him to, and that these meetings are his only contact with Ohio other than recreational trips to Kings Island. The Court must determine from these facts if Plaintiffs' cause of action against Price – misappropriation of trade secrets – arose out of his transacting business in Ohio, causing tortious injury by an act or omission in Ohio, or purposefully causing tortious injury in Ohio by an act outside Ohio.

### a. § 2307.382(A)(1)

The term "transacting business" as used in subsection (A)(1) of the long-arm statute has been defined by Ohio courts to mean "to carry on business" and "to have dealings" in the state of Ohio. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236, 638 N.E.2d 541 (1994). Two factors help determine whether an out-of-state defendant "transacted business" within the meaning of the long-arm statute:

> The first factor is whether the out-of-state defendant initiated the business dealing. . . . If the defendant reached out to the plaintiff in the forum state to create a business relationship, the defendant transacted business in the forum state. . . . The second factor is whether the parties conducted their negotiations or discussions in the forum state or with terms affecting the forum state. . . . If the parties negotiated in the forum state with provisions affecting the forum state, the defendant transacted business in the forum state.

*Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055, at *9 (S.D. Ohio Mar. 16, 2007) (citing *Ricker v. Fraza*, 160 Ohio App. 3d 634, 828 N.E.2d 205, 210 (2005)). In addition to these two factors, the plaintiff also must demonstrate that there is a substantial connection between the defendant and the forum state. *Id.* (citing *U.S. Sprint*

*Commc'ns Co. Ltd P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 624 N.E.2d 1048, 1052 (1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985))).

At all times relevant to this issue, Price was an independent contractor working for Apex Louisville as a sales representative. His work involved only Kentucky clients; he never contacted an Ohio resident regarding a sale. He never reported to anyone in Ohio, and his commission checks came from Apex Energy Solutions of Louisville. Price did not "reach out" to Plaintiffs in Ohio; rather, his only presence in Ohio was at McCain's request. Price did not conduct negotiations in Ohio, nor did he formulate any plan of action to affect Ohio. Anything Price might have learned in Cincinnati at the Apex meetings would have been knowledge he would have applied while conducting his work in Kentucky for Apex Louisville.

In a case with similar facts, an Ohio appellate court found that attendance at marketing meetings in Ohio was insufficient to establish personal jurisdiction over defendants being sued by their former employer for misappropriation of trade secrets. *Weiskopf Ind. Corp. v. Hidden Valley Towel, Inc.*, No. 67436, 1994 WL 716342 (Ohio App. Dec. 22, 1994). Although the defendants had made trips to the company's headquarters in Ohio for sales meetings and related business, the visits did not involve customer calls or other sales activities in Ohio since the defendants' sales territory was in Illinois. *Id.* at *1. The court found that there was "no evidence that defendants transacted any business in Ohio . . . or caused tortious injury in [Ohio] as those phrases are commonly understood in legal parlance." *Id.* at *3.[6] In contrast, in a case

---

[6] The *Weiskopf Industries Corp.* Court also engaged in a due process analysis and found that "mere . . . attendance at marketing meetings at [plaintiff's] Cleveland headquarters is not sufficient to support the required minimum contacts." *Weiskopf Ind. Corp.*, 1994 WL 716342 at *3.

concerning a breach of an employment contract, an Ohio court had personal jurisdiction over a former sales representative for the plaintiff company when the defendant's employment contract contained an Ohio choice-of-law provision; the defendant had regular and continuous facsimile and telephone contact with the officers and employees of the Ohio office; the defendant received his employment checks, commission checks, and expense checks from the Ohio office; and he was required to attend, on a yearly basis, a three-day sales manager meeting in Ohio. *Hercules Tire & Rubber Co. v. Murphy*, 133 Ohio App. 3d 97, 101, 726 N.E.2d 1080 (1999).[7] The facts as alleged in the present case are more analogous to those in *Weiskopf Industries* than *Hercules Tire*. Here, there is no allegation that Price conducted any sales activity in Ohio, he is not bound by an Ohio choice of law provision, he did not receive any compensation checks from Ohio, and he attended only two meetings in Ohio each of which lasted less than one day.

Plaintiffs have presented the Court with no case law to support a conclusion that attending two business meetings in Ohio and learning business information that was never to be used in Ohio is sufficient to constitute "transacting business" in Ohio sufficient to satisfy that prong of the long-arm statute. Accordingly, Plaintiffs have not met their burden of proving that jurisdiction over Price is proper under Ohio Rev. Code § 2307.382(A)(1).

### b. § 2307.382(A)(3)

The Ohio long-arm statute also allows for personal jurisdiction over any person who causes tortious injury by an act or omission in Ohio. Ohio Rev. Code § 2307.382(A)(3). "The

---

[7] The court mentioned the "transacting business" prong of the Ohio long-arm statute but focused its discussion on the due process element of personal jurisdiction, finding that the defendant "had sufficient dealings with the state of Ohio to allow the trial court to invoke jurisdiction over him." *Hercules Tire*, 133 Ohio App. 3d at 101.

scope of subsection (3) is limited to a tortious occurrence in which the causing act or omission as well as the resulting injury occur in Ohio. Subsection (3) contemplates that the act or omission causing tortious injury must be committed in Ohio." *Kehoe Component Sales, Inc. v. Best Lighting Prod., Inc.*, No. 2:08-cv-2009, 2009 WL 2591757, at *4 (S.D. Ohio Aug. 19, 2009) (quoting *Ginter v. Strickland*, 89 F.R.D. 70, 73 (S.D. Ohio 1981)).

Plaintiffs allege that "Price's knowledge of and improper use of [Plaintiffs'] trade secrets and proprietary information will result in unfair competitive advantage to Price and the other Defendants." (Am. Compl. ¶ 41.) Plaintiffs do not argue or suggest that Price *acquired* the trade secrets by wrongful means. Rather, they claim that Price will misuse or wrongfully disclose secrets that he lawfully obtained in Ohio.[8] This fact distinguishes this case from *Kehoe Component Sales, Inc.*, in which the district court determined it had personal jurisdiction under § 3207.382(A)(3) over a non-resident defendant who, during a meeting in Ohio, fraudulently induced the plaintiff to sign an agreement and thereby disclose confidential information. 2009 WL 2591757 at *4. In *Kehoe*, the court found that "as long as the confidential information was obtained because of [allegedly fraudulent] behavior in Ohio, such as inducing and signing a contract, then the actual use of the information may be outside Ohio." *Id.* In this case, there is no allegation that Price engaged in any fraudulent behavior in Ohio or that his acquisition of trade secret information in Ohio was in any way improper. Price's acts that Plaintiffs claim are

---

[8] "Misappropriation" under the Ohio Uniform Trade Secrets Act includes the disclosure or use of a trade secret of another without the express or implied consent of the other when the person using or disclosing the trade secret knew that the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy. Ohio Rev. Code § 1333.61(B)(2)(b).

causing tortious injury occurred or will occur in the place where any trade secret is disclosed or used.

Plaintiffs do not specifically allege where Price will improperly use or disclose Plaintiffs' trade secrets, but there is no allegation that Price presently has any business involvement in Ohio. The evidence indicates that Price is engaged in business activities in Kansas City, Missouri. Even assuming that Price obtained trade secrets while at the meetings in Cincinnati and that Price is using or will use them in his current business in Kansas City, Price's alleged act of misappropriation of trade secrets is not an act being committed in Ohio. Therefore, the allegations of the Amended Complaint are insufficient to establish personal jurisdiction over Price under § 2307.382(A)(3).

### c. § 2307.382(A)(6)

The Court now must determine whether Price is amenable to the jurisdiction of this Court under subsection (A)(6) of Ohio's long-arm statute, which permits a court to exercise personal jurisdiction over a nonresident defendant if the cause of action arises from a tortious act committed outside Ohio with the purpose of injuring persons, when the nonresident defendant might reasonably have expected that some person would be injured thereby in Ohio. *See Clark v. Connor*, 82 Ohio St. 3d 309, 313, 695 N.E.2d 751 (1998). Courts have applied this section of the long-arm statute to confer personal jurisdiction over a defendant when the complaint alleges that the defendant has engaged in acts of conversion (*State ex rel. Toma v. Corrigan*, 92 Ohio St. 3d 589, 752 N.E.2d 281 (2001)); fraudulent misrepresentation (*Conti v. Pneumatic Prods. Corp.*, No. C-1-91-81, 1991 WL 426453 (S.D. Ohio Aug. 27, 1991)); and breach of contractual

nondisclosure agreements (*Clark*, 82 Ohio St. 3d at 313; *Innovative Digital Equip. Inc., v. Quantum Tech., Inc.*, 597 F. Supp. 983 (N.D. Ohio 1984)).

Plaintiffs do not allege that Price has converted any property or engaged in fraudulent misrepresentations, nor do they allege that Price has breached any contractual nondisclosure agreement.  Rather, Plaintiffs claim that Price will violate the Ohio Trade Secrets Act by disclosing the trade secrets he learned to the other Defendants.  Price quit his job with Apex Louisville to pursue a business venture with his brother in Kansas City.  Prior to moving to Kansas City, Price trained with Apex Indiana for one week to learn how to operate a franchise. There are no grounds for a conclusion that Price could reasonably expect that these actions would injure Plaintiffs in Ohio.  The Court does not find, and there is no precedent to suggest, that Price's alleged behavior constitutes "tortious injury" in Ohio "committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby" in Ohio.  Ohio Rev. Code § 2307.382(A)(6).

In contrast are cases where the defendant was a party to a nondisclosure agreement and then knowingly breached the agreement.  *See*, *e.g.*, *Clark*, 82 Ohio St. 3d at 313 ("[Defendant], by entering into the nondisclosure agreements . . ., could have reasonably expected that breaching the agreements by disclosing the confidential information . . . would injure [plaintiff]"); *see also Innovative Digital Equip. Inc.*, 597 F. Supp. at 987 (finding jurisdiction over a nonresident defendant where the Ohio plaintiff alleged that defendant stole its customer lists from Ohio and where a secrecy agreement that was allegedly breached by the nonresident defendant had been executed in Ohio).  Price was not a party to any nondisclosure agreement, and even assuming that he obtained confidential information in Ohio, there are no facts to

suggest that any disclosure by Price of that information would be undertaken for the purpose of injuring Plaintiffs in Ohio — a market in which Price does not compete. To summarize, even taking as true Plaintiffs' allegation that Price learned trade secrets during the time he was in meetings conducted in Ohio, the Plaintiffs have failed to establish a prima facie case for jurisdiction over Price under Ohio's long-arm statute.

### 2. Federal Due Process

Because the Court does not have the authority to exercise jurisdiction over Price under Ohio's long-arm statute, the Court need not determine whether Price has had "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). However, the Court will briefly explain why, even if long-arm jurisdiction were present, it could not constitutionally exercise specific personal jurisdiction over Price.

To determine whether it can constitutionally exercise specific personal jurisdiction over Price, the Court must apply the three-prong test set forth in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968): (1) the defendant must purposefully avail him of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. *Id.* at 381.

"The purposeful availment prong of the Southern Machine test is essential to a finding of personal jurisdiction." *Calphalon Corp.*, 228 F.3d at 721. It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."

*Id.* at 721-22 (quoting *LAK, Inc.*, 885 F.2d at 1301). The Supreme Court explained the criteria of the "purposeful availment" prong this way:

> Jurisdiction is proper . . . where the [defendant's] contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal citations omitted).

Application of these criteria to the facts of this case reveals that Price did not purposefully avail himself of the privilege of acting in Ohio or causing a consequence in Ohio. Price worked as an independent contractor for Apex Lousiville and served as a sales representative in the Lexington, Kentucky market. Price had no involvement in the decision by McCain and Foit to reorganize the Apex entities, which resulted in McCain obtaining ownership of both Apex Louisville and Apex Cincinnati. Price did not deliberately engage in significant activities within Ohio. To the contrary, he did no business in Ohio and traveled there only at McCain's request.

The Sixth Circuit has ruled that a defendant's contacts with a forum state that occur solely because the plaintiff chose to be located there are "precisely the type of 'random,' 'fortuitous,' and 'attenuated' contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction." *Calphalon Corp.*, 228 F.3d at 723; *see also Pagloni & Assoc., Inc.*, 2007 WL 852055, at *7 (granting motion to dismiss for lack of personal jurisdiction where the only connection between the subject matter of the complaint and Ohio was that the

14

plaintiff happened to be situated there). Because Price's alleged contacts with Ohio occurred only because Apex Cincinnati and McCain were located there, Price did not purposefully avail himself of the privilege of acting in Ohio.

Because Plaintiffs have not made a prima facie showing on the "essential" prong of the *Southern Machine Co.* test, purposeful availment, the Court could not exercise personal jurisdiction over Price even if jurisdiction was proper under Ohio's long-arm statute. *See Calphalon Corp.*, 228 F.3d at 721. In summary, even considering the allegations in a light most favorable to Plaintiffs, Plaintiffs have not made a prima facie showing of personal jurisdiction over Price under federal due process, and the Court lacks personal jurisdiction over him.

### B. Motion to Dismiss Plaintiffs' Request for Punitive Damages

Plaintiffs assert a "Cause of Action" that reads as follows:

> At all times relevant hereto, with respect to all counts of this Complaint, Defendants acted intentionally, willfully, wantonly, and with a complete and conscious disregard for Apex Cincinnati and Apex Louisville's rights, entitling Apex Cincinnati and Apex Louisville to an award of punitive damages.

(Am. Compl. para 71.)[9] This "cause of action" is not a claim for relief but a request for punitive damages. *See Bowden v. City of Franklin, Ky.*, 13 F. App'x 266, 276 (6th Cir. 2001). Federal Rule of Civil Procedure 8(a) provides that a "claim for relief" must contain three elements: (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the

---

[9] When reading this "Cause of Action" in conjunction with the remainder of the Amended Complaint, it is evident that Plaintiffs are claiming that the Foit Group intentionally, willfully, and wantonly interfered with the business relationship between Price and Apex Louisville and misappropriated Apex Louisville's confidential trade secret information.

relief sought.  Plaintiffs' request for punitive damages in this case is not, therefore, a "claim" in and of itself but rather a demand for the relief sought.  For this reason, the Court does not agree with Defendants that the Supreme Court's ruling in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), dictates dismissal of Plaintiffs' "claim" for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6).  In *Iqbal*, the Supreme Court held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.  In this case, Defendants do not dispute that Plaintiffs have adequately plead their stated *claims for relief*.  Rather, Defendants assert that Plaintiffs have not adequately plead facts sufficient to support an entitlement to relief in the form of punitive damages.

The Court will not dismiss Plaintiffs' demand for punitive damages pursuant to Rule 12(b)(6).  However, Defendants are entitled to know the facts upon which Plaintiffs' demand for punitive damages is based.  Under Ohio law,

> [p]unitive damages need not be specifically pleaded or claimed.  However, the plaintiff must allege facts in the complaint from which the essential element of malice may be inferred.  If the plaintiff's complaint does not allege such facts, the plaintiff must amend his or her complaint to allege facts supporting an inference of malice.

*Lum v. Mercedes Benz USA, LLC*, No., 3:05CV7191, 2006 WL 1174228, at *2 (N.D. Ohio Apr. 28, 2006) (quoting *Bell v. Joecken*, No. 20705, 2002 WL 533399, at *1 (Ohio App. Apr. 10, 2002)); *see also Moskovitz v. Mt. Sinai Med. Ctr*, 69 Ohio St. 3d 638, 652, 635 N.E.2d 331 (1994) (holding that actual malice is necessary for an award of punitive damages in tort actions).  Accordingly, to be entitled to pursue punitive damages, Plaintiffs must file an amended complaint that alleges the facts they believe support an inference of malice.

16

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (doc. 23) is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as to Price; the complaint against him is hereby dismissed without prejudice pursuant to Rule 12(b)(2).  The Motion is DENIED as to Plaintiffs' request for punitive damages.  Plaintiffs must file an amended pleading that complies with this Order within fourteen days of the entry of the Order.

IT IS SO ORDERED.

      ___s/Susan J. Dlott_____
      Chief Judge Susan J. Dlott
      United States District Court